UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:12-CR-276-SDJ |
| | § | |
| MARANDA NICHOLE FOURNIER | § | |
| (4) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Maranda Nichole Fournier's Motion for Reconsideration of Emergency Motion to Request Compassionate Release.[1] (Dkt. #171). The Government responded in opposition. (Dkt. #174). The Court, having reconsidered its prior ruling and having considered the parties' filings, the record, and the applicable law, **GRANTS in part** and **DENIES in part** the motion. The Court grants the motion only to the extent that it reconsiders its prior ruling. Upon reconsideration, the Court finds that Fournier's Motion for Emergency Compassionate Release, (Dkt. #161), should be denied on the merits rather than dismissed for lack of jurisdiction.

### I. BACKGROUND

Fournier is currently serving a 151-month term of imprisonment for conspiracy to manufacture, distribute, or possess with intent to manufacture or distribute cocaine base in violation of 21 U.S.C. § 846. At the time Fournier filed her motion for reconsideration, she had served approximately 75% of her sentence. Citing risks to

---

[1] The Court is also in receipt of a letter from Fournier dated May 13, 2021, which it has considered in ruling on Fournier's motion. (Dkt. #176).

her health associated with the COVID-19 pandemic, alleged issues with her sentencing, and her post-sentencing rehabilitation, and relying on 18 U.S.C. § 3582(c)(1)(A), Fournier requests that the Court reconsider its prior denial of her motion for compassionate release and reduce her sentence to supervised release.

Before requesting compassionate release from the Court, Fournier submitted a request for compassionate release to her warden, claiming she suffers from asthma and tested positive for COVID-19. Fournier also argued that she had served 70% of her sentence, has "plenty of outside support," and is "local." (Dkt. #166-3 at 2). The warden denied Fournier's request because her "medical condition related to COVID-19 [did] not . . . warrant an early release from [her] sentence." (Dkt. #166-3 at 3).

After receiving the warden's denial, Fournier filed a compassionate-release motion in this Court. (Dkt. #161). She asserted two allegedly extraordinary and compelling reasons for a sentence reduction: (1) her asthma and prior case of COVID-19, coupled with the risks created by the COVID-19 pandemic; and (2) the fact that her daughter was living with extended family. The Court dismissed the motion for lack of jurisdiction because Fournier had not met the "extraordinary and compelling reasons" requirement under Section 3582(c)(1)(A). *United States v. Fournier*, No. 4:12-CR-276, 2021 WL 76339, at *4, *7 (E.D. Tex. Jan. 8, 2021). Subsequently, the Fifth Circuit issued its opinion in *United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021), which bears on the "extraordinary and compelling reasons" analysis.

Fournier now moves for reconsideration of her compassionate-release motion, arguing that her obesity, asthma, and prior case of COVID-19, combined with the

risks created by COVID-19, present an extraordinary and compelling reason warranting a reduction in her sentence. She asserts that reconsideration of her COVID-19-related arguments is warranted because "FMC Carswell has a new outbreak of COVID-19 with more than 200 COVID positive [i]nmates," which allegedly places Fournier "at [a] high risk of reinfection." (Dkt. #171 ¶ 10). Fournier also argues that the Court should reconsider its prior decision because her original sentence was excessive and because she has been rehabilitated.

## II. Legal Standard

Although motions for reconsideration are not "explicitly authorized in the Federal Rules of Criminal Procedure, they are a recognized legitimate procedural device." *United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991) (per curiam). The Supreme Court has analyzed reconsideration motions in criminal cases similarly to those in the civil context, at least as to the motions' effect on appellate deadlines. *United States v. Healy*, 376 U.S. 75, 77–80, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964). Courts have inferred from *Healy*'s reasoning that "motions to reconsider in criminal prosecutions are proper and [should] be treated just like motions in civil suits." *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010). Where, as here, a defendant files a motion to reconsider more than twenty-eight days after the denial of the compassionate-release motion, the Fifth Circuit has stated that courts should "treat it as if it were a Rule 60(b) motion, as long as the grounds asserted . . . would also support Rule 60(b) relief." *United States v. Garrett*, 15 F.4th 335, 339 (5th Cir. 2021) (per curiam) (quotation omitted).

3

A court may grant a Rule 60(b) motion in a civil case for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, the judgment is based on an earlier judgment that has been reversed or vacated, or applying the judgment prospectively is no longer equitable; or (6) any other reason that justifies relief. FED. R. CIV. P. 60(b). "Not enumerated, but acknowledged by the Fifth Circuit as a basis for Rule 60(b) relief, is to rectify an obvious error of law." *Garrett*, 15 F.4th at 339 n.5 (quotation omitted). Decisions on Rule 60(b) motions are "left to the sound discretion of the district court." *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007) (quotation omitted).

Fournier argues that reconsideration is warranted due to a change in circumstances and in the applicable law. In general, "a change in decisional law after entry of judgment does not constitute exceptional circumstances and is not alone grounds for relief from a final judgment under Rule 60(b)(6)." *Diaz v. Stephens*, 731 F.3d 370, 375 (5th Cir. 2013) (cleaned up). Similarly, "[a]n intervening change in circumstance . . . is not a proper basis for a motion for reconsideration." *Garrett*, 15 F.4th at 339. But because the Government does not challenge whether reconsideration is appropriate, the Court will assume without deciding that reconsideration under Rule 60(b) is warranted in this case.

### III. DISCUSSION

Fournier appears to make three arguments in her reconsideration motion. First, she contends that reconsideration is warranted in light of her asthma, obesity, prior case of COVID-19, and the COVID-19 outbreak at FMC Carswell. Second, she argues that a change in the law—namely, a Second Circuit decision that "anything" can serve as an extraordinary and compelling circumstance—renders the Court's prior ruling legally erroneous. (Dkt. #171 at 3 (emphasis omitted)). Relying on the notion that any reason can suffice as an extraordinary and compelling reason, Fournier contends that she is entitled to compassionate release because her initial sentence was excessive. Fournier argues that her initial sentence was excessive for two reasons: (1) the Court considered all of the substance containing cocaine base involved in the conspiracy, rather than only the amount Fournier was found to have sold; and (2) the Court imposed a sentencing enhancement due to Fournier being a felon in possession of a firearm. Third, Fournier argues that her rehabilitation warrants reconsideration of the Court's denial of her motion for compassionate release. Although Fournier does not explicitly raise the argument in her motion, the Court also will consider the impact of *Shkambi* on its prior decision.

### A. 18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c).

5

One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as compassionate release.

Section 3582(c) was enacted as part of the Sentencing Reform Act of 1984. Under the first iteration of the relevant provision, district courts were authorized to grant sentence reductions on the motion of the Director of the Bureau of Prisons ("BOP") if the BOP could establish the following conditions: (1) extraordinary and compelling reasons warranted a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction was warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). *Shkambi*, 993 F.3d at 391. Notably, Congress did not define "extraordinary and compelling reasons" or otherwise indicate how that phrase should be interpreted other than to specify that rehabilitation alone did not qualify. *Id.* (quoting 28 U.S.C. § 994(t)). Instead, Congress delegated that authority to the Sentencing Commission, directing it to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

The Sentencing Commission eventually followed Congress's direction to define "extraordinary and compelling reasons" and promulgated U.S.S.G. § 1B1.13. In application note 1 to Section 1B1.13, the Sentencing Commission described what circumstances constitute "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A)(i). U.S.S.G. § 1B1.13 cmt. n.1. The Sentencing Commission essentially created four categories of "extraordinary and compelling reasons," which

can broadly be characterized as: (1) circumstances arising from certain medical conditions; (2) circumstances arising from the age of the defendant; (3) issues arising from the defendant's family circumstances; and (4) other reasons that the BOP agrees are extraordinary and compelling in a specific case. *Id.* And because Section 3582(c)(1)(A) requires that any sentence reduction be consistent with the Sentencing Commission's policy statements issued pursuant to Section 994(t), the policy statements contained in Section 1B1.13 were binding on district courts considering Section 3582(c)(1)(A)(i) motions. *See United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (holding that the Sentencing Commission's policy statements issued pursuant to 28 U.S.C. § 994 are binding on district courts when considering motions brought under 18 U.S.C. § 3582(c)).

In 2018, Congress amended Section 3582(c)(1)(A) with the passage of the First Step Act. The amendment provided that, in cases where the BOP does not file a compassionate-release motion on the prisoner's behalf, the prisoner may personally file a motion for compassionate release. *Shkambi*, 993 F.3d at 391–92. This was the First Step Act's only change to the compassionate-release framework. *Id.* at 391. Thus, while prisoners, in addition to the BOP, may now file motions for compassionate release, Section 3582(c)(1)(A)(i)'s substantive requirements that govern a prisoner's entitlement to release remain the same. *See id.* at 392 ("But the [First Step Act] left undisturbed the other three § 3582 requirements.").

Following the First Step Act's expansion of who may file a motion under Section 3582(c)(1)(A), courts were confronted with the question of whether the

Sentencing Commission's definition of "extraordinary and compelling reasons," which was promulgated prior to the First Step Act when such motions could only be filed by the BOP, remained binding on district courts when considering compassionate-release motions. The Fifth Circuit addressed this question in *Shkambi*, holding that, while U.S.S.G. § 1B1.13 is a policy statement applicable to Section 3582(c)(1)(A) motions filed by the BOP, it is inapplicable to Section 3582(c)(1)(A) motions filed by prisoners. 993 F.3d at 392.[2] Accordingly, while U.S.S.G. § 1B1.13 dictates the meaning of "extraordinary and compelling reasons" when a Section 3582(c)(1)(A) motion is filed by the BOP on a prisoner's behalf, it does not do so when, as here, a Section 3582(c)(1)(A) motion is filed by a prisoner himself. *See id.* ("[T]he policy statement continues to govern where it says it governs—on the motion of the Director of the Bureau of Prisons. But it does not govern here—on the newly authorized motion of a prisoner." (quotation omitted)). Therefore, when a prisoner files a compassionate-release motion, courts must determine what constitutes an "extraordinary and compelling reason" under Section 3582(c)(1)(A)(i).

## B. Extraordinary and Compelling Reasons

Though the Court is not bound by the Sentencing Commission's policy statement in U.S.S.G § 1B1.13 and its accompanying application notes when considering compassionate-release motions filed by prisoners, the policy statement is

---

[2] Several other circuits have similarly concluded that U.S.S.G. § 1B1.13 is inapplicable to such compassionate-release motions filed by prisoners. *See, e.g.*, *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). *But see United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that U.S.S.G. § 1B1.13 is an applicable, binding policy statement for all Section 3582(c)(1)(A) motions).

not wholly irrelevant. Courts should still look to the policy statement for guidance in determining what constitute "extraordinary and compelling reasons" for a sentence reduction when a prisoner files a compassionate-release motion. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the United States Sentencing Guidelines ('U.S.S.G.') § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *see also, e.g.*, *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused."). Using the policy statement as guidance when considering prisoner-filed compassionate-release motions is warranted for several reasons.

First, whether a compassionate-release motion is filed by the BOP or a defendant, the statutory standard governing the motion is the same. Section 3582(c)(1)(A) provides that its requirements for obtaining a sentence reduction apply "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." 18 U.S.C. § 3582(c)(1)(A). And as noted above, the First Step Act did not change Section 3582(c)(1)(A)'s substantive requirements. Thus, a policy statement defining "extraordinary and compelling reasons" in the context of BOP-filed motions necessarily informs what "extraordinary and compelling" means in the context of defendant-filed motions because the same standard governs both

motions. In other words, Section 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" phrase does not implicate shifting substantive meanings depending on who invokes the statute.

Congress's application of a single standard to govern Section 3582(c)(1)(A) motions—whether filed by the BOP or by defendants—is also evident in Section 3582(c)(1)(A)'s exhaustion requirement. Before a prisoner can file a compassionate-release motion, he must first present his case to the BOP and request that the BOP file the motion on his behalf. *See* 18 U.S.C. § 3582(c)(1)(A). Fulfilling this exhaustion requirement would be a nonsensical exercise if the standard governing the defendant's entitlement to release varied significantly depending on whether the BOP grants the defendant's request. Defendants would request compassionate release based on the interpretation of "extraordinary and compelling reasons" applicable to their motions while the BOP would evaluate such requests based on the interpretation applicable to its motions. The fact that defendants must first ask the BOP to file their compassionate-release motions before doing it themselves indicates that Congress intended no significant substantive distinction between BOP-filed and defendant-filed motions under Section 3582(c)(1)(A).

Using U.S.S.G. § 1B1.13 and its commentary as guidance to determine what is extraordinary and compelling in defendant-filed motions is further warranted by Congress's mandate that the Sentencing Commission, rather than courts, determine what constitute "extraordinary and compelling reasons" warranting a sentence reduction under Section 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) (directing the

Sentencing Commission to issue policy statements describing what constitute extraordinary and compelling reasons under Section 3582(c)(1)(A)); *Garcia*, 655 F.3d at 435 (concluding that Congress intended the Sentencing Commission's policy statements to be binding on courts in Section 3582(c) proceedings). To be sure, the Fifth Circuit has held that there is no binding policy statement because the Sentencing Commission has yet to amend its guidelines to account for the fact that defendants can now file compassionate-release motions. *See Shkambi*, 993 F.3d at 392. But Section 1B1.13 and its commentary still provide substantial insight into what the Sentencing Commission considers to be an "extraordinary and compelling reason" because the statutory standard the Sentencing Commission was applying when it promulgated Section 1B1.13 has not changed.

Nor does Section 1B1.13 become useless as guidance for defendant-filed compassionate-release motions simply because its terms state that it applies to motions brought by the Director of the BOP. Section 1B1.13 and its accompanying application notes "provide a working definition of 'extraordinary and compelling reasons'"—the standard that applies equally to BOP motions and prisoner motions. *Gunn*, 980 F.3d at 1180. Indeed, when the Sentencing Commission promulgated Section 1B1.13, its intent was not to specify a unique standard for BOP motions but rather to define "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A). 28 U.S.C. § 994(t) does not direct the Sentencing Commission to adopt standards governing prisoner motions and standards governing BOP motions. Rather, Section 994(t) directs the Sentencing Commission to "describe what should

11

be considered extraordinary and compelling reasons for sentence reduction" under Section 3582(c)(1)(A). And as the Sentencing Commission itself has explained, U.S.S.G. § 1B1.13 and its application notes constitute the Commission's implementation of Section 994(t)'s directive. *See* U.S.S.G. § 1B1.13 cmt. background ("This policy statement implements 28 U.S.C. § 994(a)(2) and (t)."). Because Section 3582(c)(1)(A) governs BOP motions and prisoner motions alike, the Sentencing Commission's definition of Section 3582(c)(1)(A)'s terms is instructive when considering a prisoner's motion brought under Section 3582(c)(1)(A)(i).

For these reasons, the Court concludes that the "extraordinary and compelling reasons" applicable to defendant-filed motions are those that are similar in kind and scope to those listed in U.S.S.G. § 1B1.13's application notes. Therefore, any proffered "extraordinary and compelling reason" that is not contained in the Sentencing Commission's policy statement should nonetheless be similar to those reasons in order to warrant release under the statute. In this sense, the Court's analysis of whether Fournier has presented "extraordinary and compelling reasons" warranting the sentence reduction she seeks will be significantly guided, though not strictly bound, by the Sentencing Commission's description in U.S.S.G. § 1B1.13 and the accompanying application notes.

## C. Fournier's Motion

### i. Exhaustion

As an initial matter, the Court may consider Fournier's compassionate-release motion only if she first meets Section 3582(c)(1)(A)'s exhaustion requirement. A court may not consider any modification to a defendant's sentence under Section

3582(c)(1)(A)(i) unless a motion for such a modification is made by the Director of the BOP or by a defendant who has fully exhausted his or her administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Fournier requested compassionate release from the warden of her facility on some of the grounds asserted before this Court—namely, her asthma and prior case of COVID-19—and the warden denied her request. *See* (Dkt. #166-3); *see also* 28 C.F.R. § 571.61(a) (providing that a prisoner's Section 3582(c)(1)(A) request for compassionate release must be submitted to the warden of her facility).

But Fournier did not raise obesity, the excessiveness of her initial sentence, or her alleged rehabilitation in her request to the warden. As this Court has previously stated, "to exhaust her administrative remedies, a prisoner must first present to the BOP the *same grounds warranting release* that the prisoner urges in her motion." *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (emphasis added). And "the exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release." *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) (citation omitted). Therefore, the Court will not consider Fournier's arguments related to obesity, the excessiveness of her initial sentence, or her alleged rehabilitation because Fournier has not satisfied the exhaustion requirement with respect to these arguments.

### ii. "Extraordinary and compelling reasons" warranting release

After reviewing the arguments that Fournier properly exhausted, the Court concludes that Fournier's motion must be denied because she has failed to present "extraordinary and compelling reasons" within the meaning of

Section 3582(c)(1)(A)(i). Fournier properly exhausted only one argument—that her asthma, which places her at a higher risk of complications should she become infected with COVID-19, combined with her prior case of COVID-19 and the COVID-19 public health crisis, constitute an extraordinary and compelling reason warranting her release. As explained above, the Court first looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" contained in U.S.S.G. § 1B1.13 and its application notes.

Fournier's circumstances do not fall within the first category of "extraordinary and compelling reasons" identified by the Sentencing Commission—circumstances arising from certain medical conditions. Section 1B1.13's application note 1 provides the following two circumstances under which a defendant's medical condition may warrant a sentence reduction:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

> (ii) The defendant is—
>> (I) suffering from a serious physical or medical condition,
>> (II) suffering from a serious functional or cognitive impairment, or
>> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G § 1B1.13 cmt. n.1(A). Although Fournier asserts that she has asthma, she does not show that this condition, which the record evidence reveals can be effectively

managed with medication, renders her unable to engage in self-care. Rather, Fournier fears that her health condition could make her more susceptible to developing a serious medical condition should she contract COVID-19 a second time.

Any suggestion that Fournier's underlying medical condition, previous case of COVID-19, and risk of contracting COVID-19 again substantially diminish her ability to provide self-care due to her conditions of confinement does not comport with the plain text of application note 1 to U.S.S.G. § 1B1.13. The note is written in the present tense. That is, the defendant must be presently suffering from a serious medical condition and such condition must presently diminish the defendant's capacity to engage in self-care in the environment of a correctional facility. By contrast, Fournier's compassionate-release motion relies on the risk of her contracting COVID-19 in the future and the risk that COVID-19 would have serious effects on her.

To the extent Fournier argues that she is unable to engage fully in proactive measures to minimize the risk of contracting COVID-19, such inability is not caused by Fournier's asthma and previous case of COVID-19. In other words, Fournier has not shown how her medical conditions prevent her from providing self-care. To the contrary, the record indicates that Fournier's health issues have been effectively managed with medication and periodic clinician evaluations. And as the Government notes in its response, Fournier is currently classified as "Care Level 1 'healthy or simple chronic care.'" (Dkt. #174 at 2–3). Thus, Fournier's concerns about the risks of COVID-19 do not fall within the "extraordinary and compelling reasons" enumerated by the Sentencing Commission in its commentary to U.S.S.G. § 1B1.13.

Fournier also contends that the facility at which she is housed, FMC Carswell, had an outbreak of COVID-19 with more than two hundred positive cases at the time she filed her reconsideration motion. (Dkt. #171 ¶ 10). Even if that is true, the facility appears to have gotten the virus under control since then. According to the Bureau of Prisons, as of May 23, 2022, there are no inmates at FMC Carswell with confirmed positive cases of COVID-19, 806 inmates have recovered from COVID-19, and eight inmates have died from the disease. *COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last accessed May 23, 2022). Thus, it appears that the facility is handling the outbreak appropriately and providing adequate medical care.

Because the Fifth Circuit has held that the Sentencing Commission's definition of "extraordinary and compelling reasons" governs Section 3582(c)(1)(A)(i) motions only when such motions are filed by the BOP, Fournier's failure to show that her circumstances fall within those described by the Sentencing Commission is not fatal to her motion. But as discussed above, the Court still looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" as significant guidance in construing that phrase as to defendant-filed motions. *See Thompson*, 984 F.3d at 433 (noting that the Sentencing Commission's commentary "informs [the] analysis" as to what constitute "extraordinary and compelling reasons" for defendant-filed compassionate-release motions). Accordingly, Fournier's allegedly extraordinary and compelling reasons should be similar in kind to those enumerated by the Sentencing Commission.

The reasons Fournier asserts as a basis for her release are unlike any of the reasons enumerated by the Sentencing Commissions in its commentary to U.S.S.G. § 1B1.13. The circumstances in application note 1 all include significant hardships that are *presently* affecting the defendant, including where a medical condition or the aging process is presently causing the significant health problems or where the defendant has minor children or an incapacitated spouse who are presently left without a caregiver as a result of the defendant's incarceration. By contrast, Fournier argues that she should be released because incarceration increases her risk of contracting COVID-19 and her medical conditions associated with asthma and a previous case of COVID-19 increase her risk of contracting COVID-19 again and having complications from COVID-19.

Of course, it is not guaranteed that Fournier would contract COVID-19 again or experience serious complications if she contracted COVID-19 again. And in fact, Fournier tested positive for COVID-19 in July 2020, exhibited symptoms including a cough, headache, and congestion, and recovered within less than a month. Though Fournier claims that FMC Carswell staff deemed her recovered without conducting further testing and that she is still experiencing symptoms, (Dkt. #171 ¶ 3), her medical records reflect that she did not report any COVID-19 symptoms after recovering.

Courts across the nation, including this one, have repeatedly denied COVID-19-based motions for compassionate release filed by prisoners who, like Fournier, have already contracted and recovered from the virus. *See, e.g., United States v.*

*Gipson*, 829 F.App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for defendant with preexisting conditions who had already contracted COVID-19); *United States v. Kennedy*, No. 4:16-CR-86(1), 2021 WL 4225703, at *5 (E.D. Tex. Sept. 16, 2021) ("Although Kennedy expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage an outbreak within his correctional facility or that the facility is specifically unable to treat Kennedy, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated."); *United States v. Smith*, No. 16-183, 2021 WL 2227269, at *4 (E.D. La. June 2, 2021) (explaining that "courts have denied compassionate release to defendants who have successfully recovered from COVID-19"); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release." (quotation omitted)).

The Court does not downplay Fournier's health issues or suggest that her concerns about COVID-19 are unreasonable. But her motion does not identify any specific, significant hardship that she presently faces; rather, the motion raises only the concern that Fournier is at risk for developing a significant hardship in the future. There is no analogous provision in Section 1B1.13 or its commentary where the increased *risk* of hardship caused by incarceration is considered an "extraordinary and compelling reason" as that phrase is used in 18 U.S.C. § 3582(c)(1)(A)(i).

Beyond the Sentencing Commission's nonbinding guidance, there is an additional reason why Fournier has failed to present an extraordinary and compelling

reason for early release: she has received a vaccine that is highly effective against COVID-19, including variants of the virus. Shaun J. Grannis et al., *Interim Estimates of COVID-19 Vaccine Effectiveness Against COVID-19-Associated Emergency Department or Urgent Care Clinic Encounters and Hospitalizations Among Adults During SARS-CoV-2 B.1.617.2 (Delta) Variant Predominance*, 70 MORBIDITY & MORTALITY WEEKLY REPORT 1291, 1292 (2021). For most prisoners, the availability of a COVID-19 vaccine "makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *see also United States v. Baeza-Vargas*, 532 F. Supp. 3d 840, 845–46 (D. Ariz. 2021) (collecting cases explaining that vaccination mitigates the risk from COVID-19 to such an extent that COVID-19, coupled with underlying medical conditions, does not present an extraordinary and compelling reason to grant compassionate release).

Thus, in exercising its discretion, the Court concludes that Fournier has failed to show that her risk of contracting COVID-19, whether considered alone or in conjunction with her underlying conditions, presents an "extraordinary and compelling reason" within the meaning of Section 3582(c)(1)(A)(i). Because Section 3582(c)(1)(a)(i) authorizes sentence reductions only for "extraordinary and compelling reasons" within the meaning of the statute, the Court finds that its previous denial of Fournier's motion was proper. However, the Court previously found that "because Fournier . . . failed to meet the controlling requirements for compassionate release set forth in Section 3582(c)(1)(A), her motion for

compassionate release must be dismissed for lack of jurisdiction." *Fournier*, 2021 WL 76339, at *7. The Fifth Circuit has since instructed that such denials should be on the merits. *Shkambi*, 993 F.3d at 390. Thus, the Court will deny the motion on its merits rather than dismiss it for lack of jurisdiction.

### iii. Section 3553(a) factors

Even if Fournier could establish that "extraordinary and compelling reasons" warrant her release, her motion for compassionate release would still fail because the sentencing factors under 18 U.S.C. § 3553(a) weigh against her. Fournier has failed to show how releasing her before she serves the full term of her sentence would align with the statutory sentencing factors—notably the seriousness of her offense, the need to promote respect for the law, the need to provide just punishment for the offense, and the need to deter others from similar criminality. 18 U.S.C. § 3553(a).

While the Court commends Fournier for participating in programs and holding steady employment while incarcerated, she continues to present a danger to the community based on the totality of the circumstances. Fournier pleaded guilty to participating in a conspiracy to sell drugs involving large amounts of cocaine, cocaine base, and other narcotics. (Dkt. #73 ¶¶ 2, 4–5). And this was not Fournier's first offense. To the contrary, she has a substantial criminal history that includes trespass, theft, criminal mischief, and manufacturing and delivering a controlled substance. (Dkt. #73 ¶¶ 22–30). Further, Fournier has been disciplined seventeen times since her sentencing. *See* (Dkt. #174-1). Most recently, she was disciplined for using abusive/obscene language in January 2021. (Dkt. #174-1 at 1). Fournier fails to show how her release reflects the seriousness of her offense, promotes respect for the law,

and provides just punishment. Considering all the relevant factors, the Court concludes that the sentence originally imposed remains sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a). Fournier's motion is therefore also denied on this basis.[3]

## D. Motion to Seal

The Government has also moved to seal an exhibit filed with its briefing on Fournier's motion for reconsideration. (Dkt. #173). Specifically, the Government requests that the Court seal Fournier's medical records. Because the medical records contain extensive sensitive personal information from Fournier's treating physicians, the Court concludes that the medical records, (Dkt. #175), should be sealed.

## IV. CONCLUSION

For all the reasons the Court has given, Defendant Maranda Nichole Fournier's Motion for Reconsideration of Emergency Motion to Request Compassionate Release, (Dkt. #171), is **GRANTED in part** and **DENIED in part**. The Court grants the motion only to the extent that it grants Fournier's request to reconsider its prior ruling.

---

[3] To the extent Fournier requests, in the alternative, that the Court order her released to home confinement, such request must also be denied. The BOP has exclusive authority to determine where a prisoner is housed; thus, the Court is without authority to order home confinement. 18 U.S.C. § 3621(b); *see also United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement."); *Zheng Yi Xiao v. La Tuna Fed. Corr. Inst.*, No. 3:19-CV-97, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement." (citing *Moore v. U.S. Att'y. Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971) (per curiam)).

Upon reconsideration, the Court **VACATES** the portion of its prior order dismissing Fournier's Motion for Emergency Compassionate Release, (Dkt. #161), for lack of jurisdiction. *See* (Dkt. #170). It is hereby **ORDERED** that Fournier's Motion for Emergency Compassionate Release, (Dkt. #161), is **DENIED** on the merits. The Court declines to consider the grounds for compassionate release raised in Fournier's motion that were not administratively exhausted and denies Fournier's request to be placed on supervised release.

It is further **ORDERED** that the Government's motion to seal, (Dkt. #173), is **GRANTED**. Fournier's medical records, (Dkt. #175), shall be **SEALED**.

**So ORDERED and SIGNED this 24th day of May, 2022.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE